## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No. 23-54240 |
| FRG Enterprises, LLC | : | Chapter 11, Subchapter V |
| | : | |
| Debtor. | : | Judge John E. Hoffman, Jr. |

| | |
|---|---|
| HB3, LLC | : |
| | : |
| Plaintiff, | : Adv. Pro. No. 24-2007 |
| | : |
| vs. | : |
| | : |
| Fox's Food LLC, *et al.* | : |
| | : |
| Defendants. | : |

### <u>MOTION OF HB3, LLC, TO REMAND CLAIMS</u>

Creditor HB3, LLC ("HB3"), moves this Court pursuant to 28 U.S.C. § 1334(c) to remand claims in this adversary proceeding back to the Franklin County, Ohio, Court of Common Pleas (the "State Court") to be determined in the case of *HB3, LLC v. Fox's Food LLC, et al.*, Case No. 22 CV 7119 (the "Lawsuit"). Eight of HB3's ten counts (the "Counts") raised in the Lawsuit should be remanded for lack of subject matter jurisdiction or under the doctrines of mandatory and permissive abstention, as follows:

A.    Count 3 (Alter Ego against Jeremy Fox), Count 5 (Tortious Interference against Non-Debtor Defendants[1]), and Count 8 (Fraud against certain Non-Debtor Defendants) must be remanded because each is a state law claim that does not involve the debtor in this bankruptcy case, FRG Enterprises, LLC (the "Debtor"),

---

[1] The "Non-Debtor Defendants" are each of the Defendants that are implicated in the Lawsuit except for the Debtor, and includes Fox's Food, LLC ("Fox's Food"), Jeremy Fox, Ronald Fox, Sammy's Bagels, LLC ("Sammy's"); Michael N. Gasbarro; The Michael N. Gasbarro Trust (the "Gasbarro Trust"); MNG Investments, LLC ("MNG") and Heirloom, LLC ("Heirloom").

and is not "related to" this bankruptcy case, leaving this Court without subject matter jurisdiction over the claims;

B.     Count 4 (Conversion of certain equipment) and Count 9 (Unjust Enrichment related to use of same) should be remanded to permit HB3 to proceed against the Non-Debtor Defendants because the Debtor has indicated that (i) it does not own the equipment at issue; (ii) it intends to surrender the equipment to HB3 through its plan of reorganization; and (iii) HB3 can proceed against the Non-Debtor Defendants on its monetary claims without affecting the Debtor; and

C.     Finally, the Court should abstain from hearing HB3's claims against the Non-Debtor Defendants under Count 1 (Violation of Ohio Uniform Fraudulent Transfer Act), Count 2 (Breach of Contract), and Count 10 (Civil Conspiracy).[2]

In conjunction with the foregoing, HB3 requests that for any claim remanded to the State Court, the Court confirm that either the automatic stay does not apply to the Non-Debtor Defendants or that the stay is lifted in accordance with the *Motion of HB3, LLC, for Relief from Automatic Stay Related to Non-Debtor Claims* (Bankruptcy Doc. 47) (the "Stay Relief Motion"), which motion is being held in abeyance pending the outcome of which matters will be remanded. To the extent that the Court remands any claim in which the Debtor is a defendant, HB3 is not seeking stay relief to pursue the Debtor under such claim. HB3 seeks to have its claims against the Debtor resolved through the claims allowance process in this case. The stay should remain as to any remanded claims to the extent the Debtor is implicated, which is the relief originally sought by HB3 in the Stay Relief Motion.

---

[2] HB3 is not seeking any relief as to Count 6 (Preliminary Injunction and TRO) or Count 7 (Declaratory Judgment).

A memorandum in support follows.

Respectfully submitted,

/s/ James A. Coutinho
Rick L. Ashton          (0077768)
James A. Coutinho      (0082430)
Andrew D. Rebholz      (0102192)
Allen Stovall Neuman & Ashton LLP
10 W. Broad St., Ste. 2400
Columbus, OH 43215
T: (614) 221-8500      F: (614) 221-5988
coutinho@asnalaw.com; ashton@asnalaw.com

&

Michael L. Dillard, Jr. (0083907)
Tiffany L. Carwile (0082522)
ARNOLD & CLIFFORD LLP
115 W. Main Street, Suite 400
Columbus, Ohio 43215
Tel: 614.460.1600
Fax: 614.469.1134
mdillard@arnlaw.com; tcarwile@arnlaw.com
*Counsel for HB3, LLC*

<u>**MEMORANDUM IN SUPPORT**</u>

**I.    BACKGROUND INFORMATION**

    **A.    Procedural Posture for this Motion to Remand**

    1.    In October 2022, HB3 filed the Lawsuit against the Debtor, Fox's Food, Jeremy Fox, Ronald Fox, and Sammy's. In the Lawsuit, as more fully set forth below, HB3 sought to enforce a License and Supply Agreement (the "Supply Agreement") between it and Fox's Food and, among other claims, set aside a fraudulent transfer of assets and operations from Fox's Food to the Debtor. That is, HB3 alleged that the Debtor was part of a conspiracy to defraud HB3 through a coordinated fraudulent transfer scheme made to look like a legitimate business deal. In fact, the Debtor is just a mere continuation of Fox's Food and the entire reason for the Debtor's existence is to assist Fox's Food and its principals in avoiding liability under the Supply Agreement.

    2.    Upon filing the Lawsuit, HB3 filed a motion for a temporary restraining order and preliminary injunction to preserve the status quo and enforce the parties' Supply Agreement. Following a contested hearing, the State Court Duty Judge granted a temporary restraining order in favor of HB3, which required the Debtor to operate under the Supply Agreement. The parties then conducted expedited discovery ahead of the preliminary injunction hearing.

    3.    After a two-day hearing on HB3's preliminary injunction request, the State Court Magistrate (the "Magistrate") issued a decision on November 22, 2022, finding in favor of HB3. A copy of the *Magistrate's Decision* is attached as <u>Exhibit A</u>.[3] The Magistrate's Decision outlines findings of an actual intent by Jeremy Fox and Fox's Food to defraud HB3 by transferring assets to the Debtor. Magistrate's Decision at ¶ 7 ("In creating FRG and transferring the assets of Fox's

---

[3] The Magistrate's Decision is not final and is pending final adoption by the State Court. Although it is not final, reference is made to the Magistrate's Decision because it shows the maturity of the underlying action, and further the complexities that are associated with removing the entirety of the Lawsuit to this Court.

Food to FRG, Jeremy Fox intended to avoid Fox's Food's obligations to HB3 under the Supply Agreement. Accordingly, there is proof of *actual intent* to defraud HB3 under R.C. 1336.04(A)(1)." (emphasis added)).

4.      Based on her findings, the Magistrate made a report and recommendation for a preliminary injunction enjoining (i) Fox's Food, the Debtor, Jeremy Fox, and any other party from attempting to abandon or breach the Supply Agreement, (ii) Sammy's, Jeremy Fox, and any other party from interfering with the Supply Agreement, and (iii) Fox's Food, the Debtor, Jeremy Fox, and all others from fraudulently dissipating the assets of Fox's Food. *Id.* at p. 15.

5.      The defendants in the Lawsuit filed objections to the Magistrate's Decision. Briefing on the objections was completed in December 2022, and the parties engaged in some discovery while waiting for the State Court's decision on the adoption of the Magistrate's Decision, during which time the temporary restraining order was active and in effect. After the objections were filed, based on discovery and evidence revealed at the preliminary injunction hearing, HB3 sought leave to file an amended complaint that added Mr. Gasbarro, the Gasbarro Trust, MNG, and Heirloom as defendants.

6.      The Debtor filed its bankruptcy case on December 6, 2023, prior to the State Court ultimately ruling on its adoption of the Magistrate's Decision. After this case was filed, the Debtor filed a *Notice of Filing under Bankruptcy Code and Suggestion of Stay* in the Lawsuit on December 7, 2023. HB3 filed the Stay Relief Motion seeking an order that would indicate the automatic stay does not apply to the Non-Debtor Defendants.

7.      HB3 filed its proof of claim on February 29, 2024 (Claim No. 7).

8.      The Stay Relief Motion was fully briefed and set for hearing, but, on the 90th day after the case was filed, the Debtor filed its *Notice of Removal* (Bankruptcy Doc. 83), wherein the

Debtor notified the Court that it was removing the Lawsuit and initiating this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 1452 and Bankruptcy Rule 9027.

9.      With its Notice of Removal, the Debtor also filed its *Plan of Reorganization of FRG Enterprises, LLC* (the "Plan") on March 5, 2024 (Bankruptcy Doc. 81). In the Plan, the Debtor identifies certain "Disputed Assets" in which HB3 claims an ownership interest. S*ee* Plan, Article II, Definition No. 15. It later indicates that it intends as a part of the Plan to replace the equipment, and that "[t]he owner of the equipment (HB3) will need to dismantle and transport the equipment away from the location at a mutually convenient time." *Id.*, Article IV, Section C.

10.     Despite the Plan containing broad language concerning a disputed claim process, and despite allowing for an anticipated chapter 11 administrative expense claim of $175,000, the Debtor has alleged that it cannot proceed toward confirmation of the Plan while litigation against HB3 is pending. Thus, the Plan is currently being held in abeyance.

**B.      Factual Background of Lawsuit**

11.     HB3 operates a retail and wholesale bagel, kosher bakery, and delicatessen business under the names "Block's Hot Bagels" and "Block's Bagels" (collectively, "Block's"). In 2016, HB3 operated two stores; and Jeremy Fox was operating a food cart called "Short North Bagel and Deli" and was buying Block's bagels to supply his business. Magistrate's Decision at ¶ 3.

12.     The parties agreed that Jeremy Fox would open and operate a new Block's store in Bexley, Ohio (the "Bexley Store"), as HB3's licensee, and pursuant to which HB3 would not open a store in Bexley, Ohio. *Id*. at ¶ 4. Jeremy Fox formed Fox's Food, *Id*. at ¶ 5, and on September 28, 2016, HB3 and Fox's Food entered into the Supply Agreement. *Id*. at ¶ 6.

13.     In February 2017, Fox's Food opened the Bexley Store. HB3 permitted Jeremy Fox to use equipment from one of its stores which, though Jeremy Fox never paid for it, remains at and

continues to be used at the Bexley Store. *Id*. at ¶ 7; see also Statement of Financial Affairs,
Bankruptcy Doc. 34, Item No. 21 (indicating that the Debtor continues to hold and control property
owned by HB3), and the Plan provisions cited above.

14.     In 2019, Jeremy Fox decided to open another restaurant using the "Block's" name
(the "North Market Store") under the same terms as the Bexley Store with respect to the exclusive
supply of Products by HB3. An oral agreement was made, between HB3 and Fox's Food, for Fox's
Food to open the North Market Store for an annual license fee of $12,500, which fees have never
been paid. *Id.* at ¶¶ 11-12.

15.     In early 2021, Jeremy Fox contacted Sammy's Foods LLC ("Sammy's Foods"), a
direct competitor of HB3 and a company with bagel production capabilities, to negotiate a
purchase of Sammy's Foods. *Id*. at ¶ 13. Jeremy Fox formed a new entity—Sammy's—and used
that entity to purchase Sammy's Foods without ever informing HB3. *Id*. at ¶¶ 14-15.

16.     Thereafter, Jeremy Fox, in conjunction with his father, Ronald Fox, and business
associate, Mr. Gasbarro, developed a plan to transfer the assets of Fox's Food to a new entity—
the Debtor—and to begin operating as "Fox's Bagels". The purpose of that plan was to avoid the
Supply Agreement. *See id*. at ¶ 18.

17.     Jeremy Fox formed the Debtor in July 2022, and in September 2022 caused Fox's
Food and the Debtor to enter into an Asset Purchase Agreement (the "APA") whereby Fox's Food
would sell all its assets to the Debtor, with the exception of certain excluded assets, including the
Supply Agreement. *See id*. at ¶¶ 19-20. The two main purposes for the APA between Fox's Food
and the Debtor were to (1) enable Fox's Food to avoid its liability to HB3 under the Supply
Agreement and the oral agreement regarding the North Market Store, and (2) permit Sammy's,
rather than HB3, to supply Products to Jeremy Fox's restaurants. *Id*. at ¶ 23.

18.     On October 2, 2022, Jeremy Fox conducted business as usual as "Block's Bagels". After he closed the Bexley Store and the North Market Store for the evening, he fired all his employees who had been receiving paychecks from Fox's Food, immediately rehired those same individuals as employees of the Debtor, changed the signage at the restaurants from "Block's Bagels" to "Fox's Bagel and Deli", put out menus with new designs offering largely the same fare, and began having Sammy's supply his restaurants. *Id*. at ¶ 24. Everything in the Bexley Store and the North Market Store, except the store names, remained the same—the locations, equipment, fixtures, furniture, computers, phones, phone numbers, and employees.

19.     Thereafter, until the State Court issued its temporary restraining order, the Debtor's operations at the Bexley Store and the North Market Store were being supplied by Sammy's. *Id*. at ¶ 30. Thus, Jeremy Fox and his companies were temporarily successful in using the formation of the Debtor and the fraudulent transfer of assets to the Debtor in order to avoid Fox's Food's obligations to HB3 under the Supply Agreement. However, the success was temporary in that the State Court issued a temporary restraining order and then issued an injunction finding that HB3 would likely prevail on the merits of its case.

20.     The Debtor removed the Lawsuit to bring the matters before this Court, initiating the current adversary proceeding. Having been initially unsuccessful, the Debtor hopes to re-try the Lawsuit in front of a different judge both on its own behalf and on behalf of the Non-Debtor Defendants. But this Court lacks jurisdiction over certain claims, and the doctrines of mandatory abstention and permissive abstention apply to the other Counts in this case. Even if the Court has jurisdiction, most of the claims at issue are not asserted against the Debtor, which reveals the true intent of the Debtor's removal—Jeremy Fox and Fox's Food (along with the other Non-Debtor Defendants) are seeking to use the Debtor as a token to absolve them of liability for their unlawful

conduct, and as a sponge to absorb the legal costs they would otherwise be forced to incur, which is exactly what they unsuccessfully attempted to accomplish in the State Court.

## II.     LAW & ARGUMENT

### A.     "Related-to" subject matter jurisdiction, generally

This Court has written extensively on the extent and limits of a bankruptcy court's jurisdiction in the cases of *In re Bavelis*, 453 B.R. 832 (Bankr. S.D. Ohio 2011), and most recently in *In re Murray Energy Holdings Co.*, 654 B.R. 469 (Bankr. S.D. Ohio 2023). In those opinions, the Court explained the jurisdiction "arising under" the Bankruptcy Code (i.e. claims for relief created or determined by a statutory provision of title 11) or "arising in" a bankruptcy case (i.e. proceedings that could only arise in bankruptcy cases), which matters are not implicated by this motion. Instead, the focus of HB3's motion as to certain jurisdictional issues is whether the Court may hear certain claims under its "related to" jurisdiction. That is, whether the outcome of such claims "conceivably have any effect on the estate being administered in bankruptcy." *In re Wolverine Radio Co.*, 930 F.2d 1132, 1142 (6th Cir. 1991) (quoting *In re Pacor, Inc.*, 743 F.2d 984, 994 (3d Cir. 1984)). As this Court noted in *Murray*, the Sixth Circuit's adoption of the *Pacor* test for related-to jurisdiction comes with "the caveat that situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement." *Murray*, 654 B.R. at 481 (quoting *Wolverine Radio*, 930 F.2d at 1142). As the party invoking the jurisdiction of the Court, the Debtor has the burden of showing that jurisdiction exists. *Bavelis*, 453 B.R. at 850. As set forth below, several of the claims in the Lawsuit contain no connection to the administration of the bankruptcy estate, and therefore there is not even related-to jurisdiction.

**B.      Criteria for determining an abstention request under 28 U.S.C. § 1334(c)**

Depending upon the legal and factual circumstances, a bankruptcy court either *must* abstain from hearing a state-law claim (mandatory abstention), pursuant to 28 U.S.C. § 1334(c)(2), or *may* abstain (permissive abstention), pursuant to 28 U.S.C. § 1334(c)(1).

**1.      Overview of Requirements for Mandatory Abstention**

The Sixth Circuit Court of Appeals has interpreted the required elements for mandatory abstention on multiple occasions. *See, e.g.*, *In re Dow Corning Corp.*, 86 F.3d 482, 497 (6th Cir. 1996); *see also In re Lowenbraun*, 453 F.3d 314, 320 (6th Cir. 2006). The standard set forth in those cases says that "[f]or mandatory abstention to apply, a proceeding must: (1) be based on a state claim or cause of action; (2) lack a federal jurisdictional basis absent the bankruptcy; (3) be commenced in a state forum of appropriate jurisdiction; (4) be capable of timely adjudication; and (5) be a non-core proceeding." *Lowenbraun*, 453 F.3d at 320 (quoting *Dow Corning*).

As to the fifth element, whether a proceeding is core or non-core: "[a] core proceeding either invokes a substantive right created by federal bankruptcy law or one which could not exist outside of the bankruptcy." *Lowenbraun*, 453 F.3d at 320, *citing In re DeLorean Motor Co.*, 155 B.R. 521, 525 (B.A.P. 9th Cir. 1993). Again, this Court extensively discussed the manner of determining whether a claim is "core" or "non-core" in the *Bavelis* decision, which need not be repeated at length here. *See Bavelis*, 453 B.R. at 855.

**2.      Overview of Requirements for Permissive Abstention**

Under the permissive abstention statute, a court may abstain from hearing a case in the interest of justice, or in the interest of comity with state courts or respect for state law. *See* 28 U.S.C. § 1334(c)(1). Courts have identified various factors to consider when determining whether permissive abstention is appropriate, including the following:

1. the effect or lack of effect on the efficient administration of the estate if a court abstains;
2. the extent to which state law issues predominate over bankruptcy issues;
3. the difficulty or unsettled nature of the applicable state law;
4. the presence of a related proceeding commenced in state court or other non-bankruptcy court;
5. the jurisdictional basis, if any, other than 28 U.S.C. § 1334;
6. the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
7. the substance rather than form of an asserted core proceeding;
8. the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
9. the burden on this court's docket;
10. the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
11. the existence of a right to a jury trial;
12. the presence in the proceeding of nondebtor parties; and
13. any unusual or other significant factors.

*Murray*, 654 B.R. at 496, *citing Meritage Homes Corp. v. JPMorgan Chase Bank, N.A.*, 474 B.R. 526, 573 (Bankr. S.D. Ohio 2012); *see also In re Duran*, 586 B.R. 7, 11 (Bankr. N.D. Ohio 2018).

As will be set forth below, almost all of these factors weigh in favor of permissive abstention here.

### C.   Description of the relevant claims

#### 1.   No Jurisdiction - Counts 3, 5, and 8

Three of the Lawsuit counts that HB3 seeks to remand (the "No-Jurisdiction Claims") are claims in the Lawsuit that do not involve the Debtor. Count 3 asserts that Fox's Food is the alter ego of Jeremy Fox, such that Jeremy Fox should be liable for the debt that Fox's Food owes HB3. The Debtor is not a defendant to that claim. Count 5 asserts that certain Non-Debtor Defendants tortiously interfered with the business relationship between HB3 and Fox's Food, based on independent conduct unrelated to the Debtor.[4] Finally, Count 8 asserts that Jeremy Fox, Fox's Food, and Ronald Fox engaged in fraud in the inducement of the Supply Agreement for actions

---

[4] By way of example only, MNG provided funding to perpetuate the parties' fraud and Sammy's and Heirloom may have been providing supplies to the obligor, Fox's Food, enabling breach of the Supply Agreement.

that pre-date the formation of the Debtor. Each of these are direct state claims entirely unrelated to the Debtor, and the Court lacks even related-to jurisdiction to hear them.

### 2.    Equipment and Goodwill Claims - Counts 4 and 9

Two other Counts (the "Equipment and Goodwill Claims") seek damages for conversion and unjust enrichment. Count 4 seeks damages against Jeremy Fox, Fox's Food, and the Debtor for conversion of certain of HB3's equipment. The Debtor does not deny that this equipment belongs to HB3, see Plan, Article IV, Section C, and intends to return the equipment to HB3. Count 9 seeks recovery for Fox's Food's use of the goodwill inherent in HB3's trade name, and this recovery would only be for the time period prior to the formation of the Debtor. As further set forth in the Stay Relief Motion, HB3 does not seek to pursue the Debtor on these claims and solely seeks to pursue Jeremy Fox and Fox's Food. The Equipment and Goodwill Claims would not affect the bankruptcy estate and have little to nothing to do with the Debtor, supporting permissive abstention of these matters and remand to the State Court.

### 3.    Other Non-Debtor Claims - Counts 1, 2, and 10

For the final three Counts that HB3 seeks to remand (the "Other Non-Debtor Claims"), HB3 has direct causes of action against Non-Debtor Defendants through which HB3 may recover that do not implicate the Debtor or the assets in the bankruptcy estate. Count 1 asserts that Jeremy Fox, Fox's Food, and the Debtor are liable for a violation of the Ohio Uniform Fraudulent Transfer Act, and HB3 asserts that it can recover independently from Jeremy Fox and Fox's Food without implicating the Debtor. Similarly, Count 2 asserts a claim for breach of contract of the Supply Agreement against Jeremy Fox, Ronald Fox, Fox's Food, and the Debtor, but the provisions of that contract allow HB3 to recover directly from the Non-Debtor Defendants instead of the Defendant. Finally, Count 10 of the Lawsuit seeks to recover from the Non-Debtor Defendants

under a civil conspiracy claim. Again, as set forth in the Stay Relief Motion, HB3 does not seek to proceed against the Debtor for damages on any of these matters and believes they can and should proceed without the Debtor. Determination of the claims in the State Court Lawsuit would aid in the efficiency of resolving these claims while respecting the comity of the State Court which, at the very least, suggests that permissive abstention is appropriate for the Other Non-Debtor Claims.

### D. Application

### 1. Subject Matter Jurisdiction is lacking for the No-Jurisdiction Claims.

The Debtor will not be able to meet its burden in showing that the No-Jurisdiction Claims are subject to the Court's "related-to" jurisdiction. Although each of the No-Jurisdiction Claims was brought in the Lawsuit where the Debtor was a Defendant, those claims do not affect the Debtor itself and did not seek any recovery from the Debtor. The claims are against the insiders of the Debtor and against the Debtor's predecessor in interest, Fox's Food. Even if the bankruptcy case had never been filed, HB3 would not recover against the Debtor under these counts.

The Debtor may attempt to make the argument that allowing HB3 to proceed against its insiders and predecessor on these independent state law claims may impact the Debtor's estate insomuch as it could result in a recovery on HB3's claim (thus reducing the amount owed by the Debtor) or affect a principal of the Debtor (resulting in a potential right of indemnification or otherwise). These arguments have generally been made in the context of a guaranty by a principal of obligations of a debtor. *See Meritage*, 474 B.R. at 561 (Bankr S.D. Ohio 2012). In *Meritage*, this Court recognized the guarantor argument, but stated that "a recovery by a creditor against a nondebtor guarantor will not necessarily have a conceivable effect on the estate in all, or even most, bankruptcy cases. … Indeed, an argument could be made in many bankruptcy cases that a reduction or elimination of the lender's claim would have no effect on the estate because there

would be a concomitant increase in the amount of claims against the estate based on the rights of subrogation, reimbursement and/or indemnification asserted by the guarantor, the result being a mere substitution of creditors." *Id*.

Here, the No-Jurisdiction Claims are even more remote. They deal with independent state law claims against certain Non-Debtor Defendants arising out of fraud, direct breach of contract as to Jeremy Fox, breach of a guaranty by Ronald Fox, and an alter-ego claim against Jeremy Fox. Arguing that these claims will affect the administration of the bankruptcy estate would be to stretch the "related to" jurisdiction beyond its limits, whereby the filing of a bankruptcy will extend protection to a debtor's principals. They are the types of claims with an "extremely tenuous connection to the estate [that] would not satisfy the jurisdictional requirement." *Wolverine Radio*, 930 F.2d at 1142. To be sure, permitting these claims to remain before the Bankruptcy Court will actually harm the estate, forcing the Debtor to be involved in more expansive litigation that it does not necessarily have an interest in. Thus, these claims should be remanded on the basis of lack of subject matter jurisdiction.

### 2. The elements of Mandatory Abstention are satisfied in this case.

The doctrine of mandatory abstention applies to all three categories of claims set forth above. The five elements can be summarily detailed as follows:

**The Lawsuit is an action clearly based on state law causes of action.** Each of the claims presented in the Lawsuit are derived from state law causes of action. There are no federal claims.

**There is no federal jurisdiction absent the bankruptcy.** Beyond the Debtor's bankruptcy case, there is no federal jurisdiction for any of the claims in the Lawsuit. Specifically, none of the issues therein present a federal question because everything arises under state law, and there is no

diversity between the parties because every party resides in Ohio. Thus, but for the bankruptcy filing and the removal by the Debtor, these claims would absolutely be heard by the State Court.

**There is already a case pending in a state forum of appropriate jurisdiction.** The Lawsuit was filed in the State Court, which is an appropriate forum for this dispute between HB3 and the Non-Debtor Defendants. The Lawsuit has been stayed, but is still pending, and would be the most appropriate place to litigate these matters. Moreover, these matters have already been litigated before the State Court, such that there is a pending Magistrate's Decision awaiting action by the State Court that will resolve many of the underlying issues.

**The State Court case is capable of timely adjudication.** As set forth above, the Lawsuit was pending for approximately fourteen months prior to the filing of the Debtor's bankruptcy case and the imposition of the automatic stay pausing that litigation. The parties not only engaged in discovery over that time period but even received the Magistrate's Decision, which is pending review by the State Court itself. There are multiple motions that have been filed in the Lawsuit that have been under advisement by the State Court for the better part of a year, and the State Court is already familiar with this matter.

On the other hand, the Debtor would have this Court supplant itself over the State Court and take control of a mature proceeding. In so doing, the Bankruptcy Court would not only need to familiarize itself with the particular claims against the Debtor by HB3 but would also need to expand its review over the independent claims against each of the Non-Debtor Defendants and draw those other eight parties into this proceeding. Furthermore, the Bankruptcy Court would need to pick up where the State Court left off with each of the pending motions and with the pending Magistrate's Decision. *See* Fed. R. Bankr. P. 9027(i) ("All injunctions issued, orders entered and other proceedings had prior to removal shall remain in full force and effect until dissolved or

modified by the court."). *See also In re Ramirez*, 2010 WL 1904270, at *5–6 (Bankr. S.D. Tex. May 11, 2010); *In re Cattell*, 2021 WL 1100068, at *4 (Bankr. D. Or. Mar. 22, 2021) ("…everything that has already happened before removal remains in effect after removal."); *In re Vandevco Ltd.,* 632 B.R. 790, 804–06 (Bankr. W.D. Wash. 2021) ("The purpose of Rule 9027 is to preserve continuity when a civil action is removed to federal court."). However, certain non-core matters would require the District Court to rule on this Court's findings of facts and conclusions of law, further extending the timeline in federal court. Complicating matters even further, there is no procedure within the Bankruptcy Rules under which the Court may review and adopt the Magistrate's Decision. There is such a process under the Federal Rules of Civil Procedure for federal magistrates, *see* Fed. R. Civ. P 72, but not under the Bankruptcy Rules. Thus, in order to take on this case, the parties may be required to completely re-litigate the entirety of the proceedings, causing substantial delay and untold expense.

There can be no dispute that the Lawsuit was in an advanced position and can be determined in a more timely manner than this case, which is still in its infancy. Removal only succeeds in causing substantial procedural issues, delays, and costs.

**As to the Non-Debtor Defendants, these are non-core proceedings.** 28 U.S.C. § 157(b)(2) sets out a non-exhaustive list of core proceedings, the most relevant of which are those specifically referred to in the Debtor's Notice of Removal:

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate; …

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11…of title 11…; …

(K) determinations of the validity, extent, or priority of liens; …

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship…

*See* Notice of Removal at ¶ 5, *citing* 28 U.S.C. §§ 157(b)(2)(A), (B), (K), and (O).

To dispense with the No-Jurisdiction Claims, none of the counts therein are matters implicating the Debtor or affecting the Debtor's assets because none of those claims implicate the Debtor. The No-Jurisdiction Claims pertain solely to Non-Debtor Defendants; these counts do not concern the administration of the estate, allowance or disallowance of claims against the Debtor, the validity of liens, the liquidation of Debtor's assets, or the debtor-creditor relationship between HB3 and Debtor. Therefore, none of the counts in the No-Jurisdiction Claims present matters that make this a core proceeding.

The same could be said for the Equipment and Goodwill Claims. The Debtor has acknowledged that the equipment it holds belongs to HB3, and has made no claim to the goodwill held by Non-Debtor Defendants prior to the Debtor's origin. It follows that no pursuit of those counts could then influence the administration of the estate or the liquidation of assets in the bankruptcy case. In fact, the Debtor has indicated that it plans to abandon the equipment back to HB3, so any indication by the Debtor that HB3's claims against the Non-Debtor Defendants on these counts would affect it is not consistent with its own Plan. The Equipment and Goodwill Claims as against the Non-Debtor Defendants are non-core.

Finally, the Other Non-Debtor Claims also do not trigger any of the § 157(b)(2) provisions listed by the Debtor. Because HB3 is only seeking recourse against Non-Debtor Defendants in the Lawsuit, there are no matters concerning the administration of the Debtor's estate, as well as no matters affecting the liquidation of the Debtor's assets or adjusting the debtor-creditor relationship.

The Debtor will claim that the Bankruptcy Court needs to adjudicate all of these claims because of the potential for inconsistent outcomes between the Bankruptcy Court and the State

Court. That is, the Debtor claims that the Bankruptcy Court may absolve it from liability while the State Court may find the Non-Debtor Defendants are liable to HB3, or vice versa. But there is no increased risk to the Debtor from the State Court finding that the actions of the Non-Debtor Defendants that occurred primarily prior to the formation of the Debtor would allow HB3 to recover from the Non-Debtor Defendants.[5] Such a finding could only impact the Non-Debtor Defendants, not the Debtor itself.

Finally, as has previously been stated in its filings, as to any possible concern that the Debtor would be bound by the litigation in the State Court Case, HB3 recognizes and agrees that no finding in the State Court Case will have a preclusive effect on the Debtor in this case. *See In re Johnson*, 548 B.R. 770, 797 (Bankr. S.D. Ohio 2016) (discussing this issue). HB3 has further indicated that it is not seeking to recover assets transferred to the Debtor under its fraudulent transfer claim. Rather, it is seeking to recover solely from the ***transferors*** under that theory for the value of the assets transferred, which is permissible under Ohio law. *See Profeta v. Lombardo,* 75 Ohio App.3d 621 (11th Dist. 1991).

The non-debtor matters presented in the Lawsuit clearly fall within the definition of non-core proceedings. *See Matter of Commercial Heat Treating of Dayton, Inc.*, 80 B.R. 880, 888 (Bankr. S.D. Ohio 1987) (defining non-core). None of the counts fall within one of the specifically enumerated core proceedings. The claims existed in the Lawsuit prior to the filing of the Debtor's bankruptcy case, and would continue to exist as between the parties independent of the bankruptcy case. Finally, there is nothing in the filing of the bankruptcy case that affects the rights of HB3

---

[5] The Debtor has attempted to make this point in its response to the Stay Relief Motion, but its arguments failed to establish any real impact on the estate by allowing the Non-Debtor Defendant litigation to continue. *See Reply in Support of Motion of HB3, LLC, for Relief from Automatic State Related to Non-Debtor Claims* (Bankruptcy Doc. 57).

against the Non-Debtor Defendants. Therefore, these matters are non-core, fulfilling the final element of mandatory abstention.

### 3. The facts in this case weigh heavily in favor of Permissive Abstention.

Even in the event the Court concludes that mandatory abstention does not apply, the factors for applying permissive abstention in this case weigh heavily in favor of the Court abstaining and remanding the claims back down to the State Court. Those factors apply as follows:

i.    **The effect or lack of effect on the efficient administration of the estate if the Court abstains.** As discussed above, there should be no effect on the administration of the estate if the Court abstains. The Debtor has indicated that it intends to file an independent objection to the HB3 proof of claim, and that matter can be litigated to determine the extent of HB3's claim against the estate. The claims of HB3 against the Non-Debtor Defendants do not need to be litigated for that determination. In fact, including the Debtor in substantial litigation between HB3 and the Non-Debtor Defendants will burden the estate with more costs.

ii.    **The extent to which state law issues predominate over bankruptcy issues.** There are no bankruptcy issues in the Lawsuit; the case is entirely governed by state law issues.

iii.    **The difficulty or unsettled nature of the applicable state law.** Generally, a court is more likely to abstain if the issue involves an unsettled aspect of applicable state law. Out of respect for state courts, this policy allows the state courts to rule on state law matters. The underlying claims do not present any difficult or unsettled state law matters. But even if the state law concepts are not unique, that does not mean the Bankruptcy Court is the appropriate venue for the Non-Debtor Defendants to seek relief.

iv.    **The presence of a related proceeding commenced in state court or other non-bankruptcy court.** This factor absolutely weighs in favor of abstention. The Lawsuit has been

pending before the State Court for over a year, and the Magistrate in that case has already entered

a decision on the merits of the issues between the parties. All parties in this case are present and

represented in that Lawsuit, and the matters therein can quickly be reactivated and brought to a

close before the State Court.

   v.   **The jurisdictional basis, if any, other than 28 U.S.C. § 1334.** This factor weighs

in favor of abstention because there is no jurisdictional basis for this adversary proceeding other

than through § 1334 as to the Non-Debtor Defendants.

   vi.   **The degree of relatedness or remoteness of the proceeding to the main**

**bankruptcy case.** To the extent that any of the counts were originally brought against the Debtor,

this case is related to the main bankruptcy case. However, the remand sought in this motion

pertains to aspects of the Lawsuit that are entirely unrelated to the Debtor and its estate. Those

Counts are very remote from the bankruptcy case and can be remanded and resolved without

affecting the administration of the bankruptcy estate.

   vii.   **The substance rather than form of an asserted core proceeding.** The fact that

the claims against the Non-Debtor Defendants are not core proceedings was detailed above. As it

were, there is nothing core about the counts that HB3 seeks to remand. That is, HB3 seeks to

remand each of the claims against the Non-Debtor Defendants and have the stay lifted so it can

proceed on those claims without affecting the Debtor.

   viii.   **The feasibility of severing state law claims from core bankruptcy matters to**

**allow judgments to be entered in state court with enforcement left to the bankruptcy court.**

It is entirely feasible to sever the claims of HB3 against the Debtor from the Non-Debtor Defendant

claims in the lawsuit. The Debtor has indicated that it will be filing a separate objection to the HB3

proof of claim, and the Court can hear and determine what claims HB3 has against the Debtor in

that proceeding. There is no need for the involvement of the Non-Debtor Defendants in that process and the claims against them are entirely severable.

ix.        **The burden on this Court's docket.** This factor weighs in favor of abstention, as it would be burdensome to retain this case when the State Court is in a much better position to carry on the litigation of the Lawsuit and its state issues. There are several matters that weigh into this factor. First, as set forth above, there are complexities to the State Court litigation caused by multiple pending motions as well as the pending Magistrate's Decision. There is no mechanism under the Bankruptcy Rules by which the Bankruptcy Court may consider and adopt the Magistrate's Decision. Further, there are non-core claims that HB3 has not consented to have finally adjudicated by the Bankruptcy Court, meaning that this Court would need to issue findings of fact and conclusions of law to the District Court, further delaying matters.

On the other hand, proceeding as HB3 has indicated would allow for the most expeditious resolution of the bankruptcy matters before this Court. The Debtor could file its objection to HB3's claim, and the matter could be litigated as to whether HB3 has a direct claim against the Debtor itself, without the complication of numerous other counts against eight other defendants. The Debtor could then proceed on its Plan in the ordinary course instead of waiting for a massive amount of litigation to conclude before proceeding. As the Court has recognized, among the *quid pro quo* of Subchapter V is the requirement that the Debtor proceed quickly. By removing the Lawsuit and involving itself in the affairs of the Non-Debtor Defendants, the Debtor is setting up its own roadblocks to a speedy confirmation.

x.        **The likelihood that the commencement of the proceeding in the bankruptcy court involves forum shopping by one of the parties.** This is the strongest factor weighing in favor of abstention. As described in the background information above, the Magistrate's Decision

demonstrates that the Non-Debtor Defendants were very likely to lose on the merits in the Lawsuit. Further described in those facts, this likelihood of failure on the merits likely precipitated the Debtor's removal of the Lawsuit to this Court. To put it simply, this is the epitome of taking another bite at the apple; the Debtor and Non-Debtor Defendants were going to be unsuccessful before the State Court, and sought to restart the litigation before this Court. The removal of the Lawsuit is clearly forum shopping.

In addition to this being a case of forum shopping, it appears that the Debtor is also attempting to use its own resources to protect its insiders. Those insiders, for instance, did not themselves object to the Stay Relief Motion; instead, it was the Debtor who attempted to stretch the stay beyond its limits. Then, on the 90th day after the case was filed, the Debtor filed for removal of the entire Lawsuit, despite there being portions of the case that clearly do not belong in Bankruptcy Court. It filed its Plan at the same time, but, rather than proceed with the Plan, the Debtor is now stating it cannot proceed to confirmation until this litigation is done. On one hand, the Debtor claims that it is an honest purchaser of assets from Fox's Food and that it owes nothing to HB3; on the other hand, the Debtor is doing everything in its power to delay HB3 and prevent it from economically proceeding on its claims against third parties.

xi.     **The existence of a right to a jury trial.** HB3 has demanded a jury trial in the Lawsuit. If HB3 does not consent to the trial by jury before the Bankruptcy Court under 11 U.S.C. § 157(e), the right may still be preserved by withdrawing the reference to the District Court. *Bavelis*, 453 B.R. at 883. But that would add more unneeded complexity and expense to an already costly and complex matter when the State Court is capable of conducting a jury trial on its own.

xii.    **The presence in the proceeding of non-debtor parties.** The existence of the many Non-Debtor Defendants in this case weighs heavily in favor of abstention and remanding this case,

especially considering the No-Jurisdiction Claims wherein HB3 is asserting claims entirely unrelated to the Debtor.

xiii. **Any unusual or other significant factors.** This case is quite unusual, including the fact that the Defendants are attempting to use the bankruptcy proceeding to bless a fraudulent transfer. They should not be given the chance to relitigate the Lawsuit from scratch in front of a different tribunal, especially when there has been the pending Magistrate's Decision under advisement. Nor should the Non-Debtor Defendants be able to piggyback on the Debtor's litigation efforts by having the Debtor involved in litigation it has no purpose in defending.

The vast majority of these factors weigh heavily in favor of permissive abstention, and thus the Court should remand these matters back to the State Court.

## III.   CONCLUSION

Based on the foregoing, HB3 respectfully requests that the Court enter an order remanding the eight Counts to the State Court and allowing the Lawsuit to continue in that arena. The doctrines of mandatory and permissive abstention apply in this case, and the Court should grant this motion accordingly.

Respectfully submitted,

/s/ James A. Coutinho
Rick L. Ashton        (0077768)
James A. Coutinho      (0082430)
Andrew D. Rebholz      (0102192)
Allen Stovall Neuman & Ashton LLP
10 W. Broad St., Ste. 2400
Columbus, OH 43215
T: (614) 221-8500     F: (614) 221-5988
coutinho@asnalaw.com; ashton@asnalaw.com

&

Michael L. Dillard, Jr. (0083907)
Tiffany L. Carwile (0082522)

ARNOLD & CLIFFORD LLP
115 W. Main Street, Suite 400
Columbus, Ohio 43215
Tel: 614.460.1600
Fax: 614.469.1134
mdillard@arnlaw.com; tcarwile@arnlaw.com
*Counsel for HB3, LLC*

## IN THE COURT OF COMMON PLEAS, FRANKLIN COUNTY, OHIO
## GENERAL DIVISION

| | | |
|---|---|---|
| **HB3, LLC,** | ] | **Case No. 22CV-07119** |
| **Plaintiff,** | ] | **Judge Stephen L. McIntosh** |
| **vs.** | ] | **Magistrate Pamela Broer Browning** |
| **Fox's Food LLC, et al.,** | ] | |
| **Defendants.** | ] | |

### Magistrate's Decision

**Browning, M.**

Pursuant to the Court's October 18, 2022 Order of Reference, the undersigned Magistrate conducted a hearing on November 7 and 8, 2022 on Plaintiff's October 13, 2022 motion for a preliminary injunction against Defendants. Plaintiff presented the testimony of Jeremy Fox, Jason Block, and Michael Gasbarro. Plaintiff's Exhibits 1, 2, 4-11, 13-15, and 21- 32 were admitted into evidence. Defendants presented the testimony of Jeremy Fox and Michael Gasbarro. Defendants' Exhibits A, B, G, H, K (1-6), L (1-11), M-R, S (1-5), T (1-7), and V were admitted into evidence.

The hearing was recorded by the Jefferson Audio Video System (JAVS) in Courtroom 4C of the Franklin County Common Pleas Courthouse, located at 345 South High Street in Columbus, Ohio. The parties engaged a private court reporter to transcribe the JAVS recording. On November 17, 2022, the parties jointly filed the hearing transcripts.

On November 18, 2022, pursuant to the Magistrate's post-hearing order, the parties filed proposed findings of fact and conclusions of law.

Having weighed the credible evidence admitted at the hearing on November 7 and 8, 2022, having taken judicial notice of the prior proceedings in this case, and having considered the parties' proposed findings of fact and conclusions of law, the Magistrate hereby renders the following decision **GRANTING** Plaintiff's motion for a preliminary injunction against Defendants.

### Findings of Fact

1.      Plaintiff is HB3, LLC ("HB3"), an Ohio limited liability company that was formed in 2010 and has its principal place of business in Franklin County, Ohio.  HB3 operates a retail and wholesale bagel, kosher bakery, and delicatessen business under the names "Block's Hot Bagels" and "Block's Bagels" (collectively "Block's").  At all relevant times, HB3 has been wholly owned by Columbus, Ohio resident Harold Block, who opened a small bagel shop under the "Block's" name in Columbus in 1967, using recipes from his uncle who had a bakery in New York City.  Harold Block is 89 years old and actively runs the day-to-day business of HB3, overseeing the company's 34 employees, some of whom have been employed by the company for more than 30 years.  His son, Steven Block, also worked in the family business.

2.      Defendants are Fox's Food LLC ("Fox's Food"), FRG Enterprises, LLC ("FRG"), Sammy's Bagels, LLC ("Sammy's Bagels"), Jeremy Fox, and Ronald Fox.  Fox's Food, FRG, and Sammy's Bagels are Ohio limited liability companies with their principal places of business in Franklin County, Ohio.  Jeremy Fox and Ronald Fox are individuals residing in Franklin County, Ohio.  Jeremy Fox is the son of Ronald Fox.  At all relevant times, Jeremy Fox has been the sole owner of, and has exercised control over, Fox's Food and Sammy's Bagels.

3.      In 2016, HB3 was operating a "Block's Hot Bagels" production-and-retail facility at McNaughten Center in Columbus, Ohio (the "McNaughten Store"), as well as a "Block's Bagels"

store at 3415 East Broad Street near Bexley, Ohio (the "Original Broad Street Store"). In 2016, Jeremy Fox was operating a food cart called "Short North Bagel and Deli" and was buying Block's bagels to supply his business.

4. In 2016, HB3 began shifting some of its operations. Specifically, Harold Block, Steve Block, Jeremy Fox, and Ronald Fox developed a plan, pursuant to which Jeremy Fox would open and operate a new Block's store in Bexley, Ohio (the "Bexley Store") as HB3's licensee, and pursuant to which HB3 would not open a store in Bexley, Ohio.

5. In 2016, Jeremy Fox formed Fox's Food.

6. On September 28, 2016, HB3 and Fox's Food entered into a written "License and Supply Agreement" ("Supply Agreement"). Under the Supply Agreement, Fox's Food is granted the right to use the "Block's" name and related intellectual property rights in connection with the sale, marketing, and distribution of bagels and related baked and deli products at and within a two-mile radius of the Bexley Store. Under the Supply Agreement, Fox's Food is obligated, for a period of ten years, to acquire all specified products, including bagels, bagel-related products, breads, challahs, desserts, chicken salad, tuna salad, egg salad, and cream cheese (the "Products") from HB3, at wholesale prices set by HB3. Under the Supply Agreement, Fox's Food is obligated to pay a license fee and performance bonus payments to HB3. Jeremy Fox, as the sole owner of Fox's Food, signed the Supply Agreement on behalf of Fox's Food.

7. In February 2017, Fox's Food opened the Bexley Store. HB3 permitted Jeremy Fox to use equipment from the Original Broad Street Store, which equipment, while never paid for, remains in the possession of Jeremy Fox and is being used at the Bexley Store.

8. Paragraph 5 of the Supply Agreement describes the performance bonus payments that Fox's Food is obligated to pay to HB3:

PERFORMANCE BONUS PAYMENTS: Annually, for the duration of this Agreement, Licensee [Fox's Food] shall pay Licensor [HB3] a bonus payment ("Performance Bonus") equal to 5% of the gross revenue in excess of $500,000, with a ceiling of $1,000,000, in annual sales generated from the Bexley Store. The first annual payment of the Performance Bonus shall be paid twelve (12) months after the opening of the Bexley Store.  Any payment of this Performance Bonus shall be subordinate to any of Licensee's obligation to make rental payments, tenant improvement payments and any payments due on the Huntington Bank Small Business Loan.  If Licensee cannot immediately make payment of the Performance Bonus, Licensor and Licensee shall work out an agreement to make such payment over the course of an agreed upon period, so as to not harm Licensee's ability to conduct Business.

9.     Fox's Food has accrued Performance Bonuses under the Supply Agreement in the amount of $25,000 per year for years 2017, 2018, 2019, 2020, and 2021.  Fox's Food has not paid those Performance Bonuses to HB3.

10.     Under the Supply Agreement, Fox's Food had an exclusive option to purchase HB3's business for an agreed amount, and upon agreed terms (the "Option").  The Option was open for two years following the effective date of the Supply Agreement (September 28, 2016), during which time Fox's Food could exercise the Option by providing written notice to HB3, along with a proposed asset purchase agreement.  Fox's Food did not, within the two-year period, exercise the Option under the Supply Agreement.

11.     In 2019, Jeremy Fox decided to open another restaurant using the "Block's" name (the "North Market Store") under the same terms as the Bexley Store with respect to the exclusive supply of Products by HB3.  An oral agreement was made, between HB3 and Fox's Food, for Fox's Food to open the North Market Store for a one-time license fee of $25,000.

12.     In March 2020, Fox's Food opened the North Market Store.  Fox's Food has not paid the $25,000 license fee to HB3 in conjunction with the opening of the North Market Store.

13.     In early 2021, Jeremy Fox contacted Sammy's Foods LLC (Sammy's Foods), a direct competitor of HB3 and a company with bagel production capabilities, to negotiate a purchase of Sammy's Foods.

14.     In October 2021, Jeremy Fox formed an Ohio limited liability company called Sammy's Bagels LLC ("Sammy's Bagels").

15.     In March 2022, Jeremy Fox used Sammy's Bagels to purchase Sammy's Foods, which was HB3's direct competitor. Jeremy Fox never told HB3 about his formation of Sammy's Bagels or the acquisition of Sammy's Foods by Sammy's Bagels.

16.     Jeremy Fox performed a cost analysis in which he compared the cost of buying products from Sammy's Bagels, which he owned, with the cost of buying products from HB3. As a result of that cost analysis, Jeremy Fox determined that he could save more than $133,000 per year by having Sammy's Bagels supply his restaurants rather than by having HB3 supply his restaurants.

17.     Jeremy Fox never told anyone at HB3 that Fox's Food was insolvent.  No evidence was presented at the hearing that Fox's Food was insolvent.

18.     On July 13, 2022, Jeremy Fox sent an email to his father, Ronald Fox, and to his business associate Michael Gasbarro, in which Jeremy Fox stated, "OK guys I've had it, I cannot continue my supply agreement with HLB3 [*sic*] anymore, it's just getting too hard to operate and I'm getting zero communication from their side."  In the email, Jeremy Fox described his plan to change the name of his stores from "Block's Bagels" to "Fox's Bagels" and his plan to start a company called FRG Enterprises, LLC, which he intended to use to buy the assets of Fox's Food, so that he would not be "locked to" the Supply Agreement.  Jeremy Fox stated, "[F]rom

my viewpoint, we should be able to say if we don't call it blocks [*sic*], we don't have to buy from

you, simple as that."

19.     In July 2022, Jeremy Fox created FRG Enterprises, LLC ("FRG"), which stands

for "Fox Restaurant Group," without telling anyone at HB3.

20.     On September 20, 2022, Fox's Food and FRG entered into an "Asset Purchase

Agreement," pursuant to which Fox's Food sold its assets to FRG, with the exception of certain

excluded assets, including the Supply Agreement between HB3 and Fox's Food.

21.     In September 2022, MNG Investments, LLC ("MNG") was formed by Michael

Gasbarro, its sole owner.

22.     Jeremy Fox owns 75 percent of FRG and MNG owns 25 percent of FRG, subject

to Jeremy Fox's managerial power and call option.

23.     The two main purposes for the Asset Purchase Agreement between Fox's Food

and FRG were to enable Fox's Food to avoid its liability to HB3 under the Supply Agreement

and the oral agreement regarding the North Market Store, and to permit Sammy's Bagels, rather

than HB3, to supply Products to Jeremy Fox's restaurants.

24.     On October 2, 2022, Jeremy Fox conducted business as usual as "Block's

Bagels."  After he closed the Bexley Store and the North Market Store for the evening, he fired

all his employees who had been receiving paychecks from Fox's Food, immediately rehired

those same individuals as employees of FRG, changed the signage at the restaurants from

"Block's Bagels" to "Fox's Bagel and Deli," put out menus with new designs offering largely the

same fare, and began having Sammy's Bagels supply his restaurants.

25.     Jeremy Fox advertises "Fox's Bagel and Deli" as "[f]ormerly known as Block's

Bagels" and claims that the stores sell "all of their most popular classic offerings enjoyed for

generations at their Bexley location." Everything in the Bexley Store and the North Market Store, except the store names, has remained the same - the locations, equipment, fixtures, furniture, computers, phones, phone numbers, and employees. Jeremy Fox changed nothing but the signage on the front of the stores and the design/format of the menus.

26.     On October 2, 2022, before notifying HB3 of the changes described above, Jeremy Fox posted to a Bexley, Ohio Facebook group that "officially the Blocks Bagels Bexley location and North market location are closed. Both locations will now be Fox's Bagel and Deli."

27.     On October 3, 2022, Jeremy Fox reopened the Bexley Store and the North Market Store as "Fox's Bagel and Deli," claiming that FRG was now operating the stores, while serving largely the same fare, served by the same employees, but now procuring Products from Sammy's Bagels instead of HB3.

28.     On October 3, 2022 at 8:09 a.m., in an email, Jeremy Fox, through counsel, notified HB3, through counsel, that Fox's Food was "no longer a going concern[,]" that the assets of Fox's Food had been sold, that Fox's Food would no longer be operating any stores, and that the "new ownership group" (FRG) would be operating the Bexley Store and the North Market Store as "Fox's Bagels and Deli" without any affiliation with HB3.

29.     Jeremy Fox took the actions described above without communicating any purported pricing issues to HB3, and without attempting to renegotiate the terms of the Supply Agreement. To the contrary, in the spring of 2022, when Jeremy Fox expressed concern to HB3 regarding costs, HB3 recommended a payment plan and asked to see the financial statements of Fox's Food. Jeremy Fox represented to HB3 that he would gather the financial statements of Fox's Food. As late as September 28, 2022, Jeremy Fox, through counsel, represented to HB3 that he was gathering the

requested financial statements of Fox's Food. That representation, however, was made after Fox's Food had contracted to sell its assets to FRG.

30.     From October 3, 2022 until October 14, 2022, the date on which this Court issued a temporary restraining order, Sammy's Bagels, and not HB3, supplied the Bexley Store and the North Market Store with the Products those restaurants used in their daily business.

31.     Jeremy Fox's conduct, as described above, has jeopardized the livelihood of the 34 employees currently working in HB3's production and retail operations, because the current production operation was built to support two or more Fox's Food locations, which included the Bexley Store and the North Market Store.  Relying on the representations made by Fox's Food in the Supply Agreement, HB3 elected not to open a new store in Bexley after HB3 closed the Original Broad Street Store.

32.     If Fox's Food is permitted to abandon the Supply Agreement and the oral agreement regarding the North Market Store, HB3 will be compelled to terminate the employment of its 34 employees, will not be able to renew its lease for 2023, will lose approximately $10,000 in revenue per month, will suffer the loss of 55 years of good will created by Harold Block, and will close its business within weeks.

33.     On October 12, 2022, HB3 filed a Verified Complaint containing several counts that are pertinent to HB3's motion for a preliminary injunction.  Count One is a claim against Fox's Food, FRG, and Jeremy Fox for violation of the Ohio Uniform Fraudulent Transfer Act, R.C. Chapter 1336.  Count Two is a claim against Fox's Food, FRG, Jeremy Fox, and Ronald Fox for breach of contract.  Count Five is a claim against Sammy's Bagels and Jeremy Fox for tortious interference with contract.  Count Eight is a claim against Fox's Food, Jeremy Fox, and Ronald Fox for a fraudulent transaction resulting in successor liability.

Case No. 22CV-07119                                                                                                                                  8

**Conclusions of Law**

1.    The purpose of a preliminary injunction is to preserve the status quo pending a resolution of a case on its merits.  *Dimension Serv. Corp. v. First Colonial Ins. Co.*, 10th Dist. Franklin No. 14AP-368, 2014-Ohio-5108, ¶ 18.   A preliminary injunction "is not available as a right but may be granted by a court if it is necessary to prevent a future wrong that the law cannot."  *Garono v. State*, 37 Ohio St. 3d 171, 173 (1988).

2.    Revised Code 2727.02 provides:

§ 2727.02 Causes for an injunction.

A temporary order may be granted restraining an act when it appears by the petition that the plaintiff is entitled to the relief demanded, and such relief, or any part of it, consists in restraining the commission or continuance of such act, the commission or continuance of which, during the litigation, would produce great or irreparable injury to the plaintiff, or when, during the litigation, it appears that the defendant is doing, threatens or is about to do, or is procuring or permitting to be done, such act in violation of the plaintiff's right respecting the subject of the action, and tending to render the judgment ineffectual.

3.    The standards by which a trial court must judge a motion for preliminary injunction are well-established.  *Schaller v. Rogers*, 10th Dist. Franklin No. 08AP-591, 2008-Ohio-4464, ¶ 30.   A moving party is entitled to injunctive relief if that party establishes a substantial likelihood of prevailing on the merits, irreparable injury in the absence of injunctive relief, no unjustifiable harm to third parties, and that the injunction will serve the public interest. *Id.*   A party seeking a preliminary injunction has the burden of establishing a right to the preliminary injunction by demonstrating clear and convincing evidence of each of these factors. *Youngstown City School Dist. Bd. of Edn. v. State*, 10th Dist. Franklin No. 15AP-941, 2017-Ohio-555, ¶ 50.   In determining whether to grant injunctive relief, no one of the four preliminary injunction factors is dispositive; rather, a balancing should be applied.  *Id.*

4.      HB3 has established a substantial likelihood that it will prevail on the merits of Count One of the Complaint, which is a claim against Fox's Food, FRG, and Jeremy Fox for violation of the Ohio Uniform Fraudulent Transfer Act, R.C. Chapter 1336.

5.      The Ohio Uniform Fraudulent Transfer Act, specifically, R.C. 1336.04, provides:

§ 1336.04 When transfer or obligation incurred is fraudulent as to a creditor.

(A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before, or within a reasonable time not to exceed four years after, the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor[.]

***

(B) In determining actual intent under division (A)(1) of this section, consideration may be given to all relevant factors, including, but not limited to, the following:

(1) Whether the transfer or obligation was to an insider;

(2) Whether the debtor retained possession or control of the property transferred after the transfer;

(3) Whether the transfer or obligation was disclosed or concealed;

(4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;

(5) Whether the transfer was of substantially all of the assets of the debtor;

(6) Whether the debtor absconded;

(7) Whether the debtor removed or concealed assets;

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;

(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

6.      Proof of actual intent to defraud, hinder, or delay any creditor is often difficult to procure.  *UAP-Columbus JV326132 v. Young*, 10th Dist. Franklin No. 09AP-646, 2010-Ohio-485, ¶ 29.  As a result, courts look to inferences from the circumstances surrounding the transaction and the relationship of the parties.  *Id.*  A creditor may establish a debtor's fraudulent intent if the circumstances demonstrate various "badges of fraud," which are statutorily defined in R.C. 1336.04(B).  *Id.*  A party need not demonstrate all of the statutorily defined badges of fraud; as few as three badges have been held to constitute clear and convincing evidence of actual fraudulent intent.  *Id.*

7.      In creating FRG and transferring the assets of Fox's Food to FRG, Jeremy Fox intended to avoid Fox's Food's obligations to HB3 under the Supply Agreement.  Accordingly, there is proof of actual intent to defraud HB3 under R.C. 1336.04(A)(1).

8.      In addition, HB3 has established five of the "badges of fraud" set forth in R.C. 1336.04(B).  HB3 has established that the transfer of the assets was to an insider, that the debtor retained possession or control of the property transferred after the transfer, that the transfer of the assets was concealed, that the transfer was of substantially all of the assets of the debtor, and that the debtor became insolvent shortly after the transfer of the assets was made.

9.      HB3 has therefore established a substantial likelihood that it will prevail on the merits of Count One of the Complaint.

Case No. 22CV-07119                                                                                            11

10.     HB3 has established a substantial likelihood that it will prevail on the merits of Count Two of the Complaint, which is a claim against Fox's Food, FRG, Jeremy Fox, and Ronald Fox for breach of contract.

11.     The elements of a claim for breach of contract are the existence of a contract, performance by the plaintiff, non-performance by the defendant, and damage or loss to the plaintiff. *Smith v. McDiarmid*, 10th Dist. Franklin No. 21AP-199, 2022-Ohio-2151, ¶ 30. HB3 has established the existence of the written Supply Agreement and the oral agreement regarding the North Market Store, HB3's performance of its obligations under both agreements, Fox's Food's non-performance of its obligations under both agreements, and damage to HB3 proximately caused by Fox's Food's breaches of both agreements.

12.     HB3 has therefore established a substantial likelihood that it will prevail on the merits of Count Two of the Complaint.

13.     HB3 has established a substantial likelihood that it will prevail on the merits of Count Five of the Complaint, which is a claim against Sammy's Bagels and Jeremy Fox for tortious interference with contract.

14.     A claim of tortious interference with a contract requires proof of five elements: the existence of a contract; the wrongdoer's knowledge of the contract; the wrongdoer's intentional procurement of the contract's breach; the lack of justification; and resulting damages. *Gambrel v. Ohio Dept. of Aging*, 10th Dist. Franklin No. 14AP-940, 2015-Ohio-2543, ¶ 11.

15.     HB3 has established the existence of the written Supply Agreement and the oral agreement regarding the North Market Store, Sammy's Bagels' (through Jeremy Fox) and Jeremy Fox's knowledge of both agreements, their intentional procurement of the breaches of both agreements, the lack of justification for the breaches, and resulting damages to HB3.

16.     HB3 has therefore established a substantial likelihood that it will prevail on the merits of Count Five of the Complaint.

17.     HB3 has established a substantial likelihood that it will prevail on the merits of Count Eight of the Complaint, which is a claim against Fox's Food, Jeremy Fox, and Ronald Fox for a fraudulent transaction resulting in successor liability.

18.     As a general rule, a successor corporation is not liable for the debts and liabilities of the former entity. *Erdy v. Columbus Paraprofessional Inst.*, 74 Ohio App. 3d 462, 464 (10th Dist. Franklin 1991).    However, four exceptions are recognized to the general rule of nonliability: (1) the buyer expressly or impliedly agreed to assume such liability; (2) the transaction amounts to a *de facto* consolidation or merger; (3) the buyer corporation is merely a continuation of the seller corporation; or (4) the transaction is entered into fraudulently for the purpose of escaping liability. *Id.*

19.     HB3 has established a substantial likelihood that it will prevail on the merits of its claim that the Asset Purchase Agreement between Fox's Food and FRG was entered into fraudulently for the purpose of Fox's Food escaping liability to HB3 under the written Supply Agreement and the oral agreement regarding the North Market Store, and that HRG is therefore liable for the debts and liabilities of Fox's Food arising under both agreements.

20.     HB3 has therefore established a substantial likelihood that it will prevail on the merits of Count Eight of the Complaint.

21.     Irreparable injury or harm, which must be shown for injunctive relief, is defined as an injury for the redress of which, after its occurrence, there could be no plain, adequate, and complete remedy at law, and for which restitution in money would be impossible, difficult, or incomplete. *Dimension Serv. Corp. v. First Colonial Ins. Co.*, 2014-Ohio-5108, ¶ 12.  In Ohio,

Case 2:24-cv-03007-TM Doc. #: 4-4 Filed: 04/04/24 or Entered: 2022/04/22 22:54 P.M. 22 Cv807 Main
Document    Page 38 of 42

EXHIBIT A
Page 14 of 17

courts of equity are insistent that the legal remedy shall be in all respects adequate to justify the refusal of the injunction upon that ground. *Mid-American Tire, Inc. v. PTZ Trading Ltd.*, 95 Ohio St. 3d 367, 2002-Ohio-2427, ¶ 81. In order to be considered adequate, the legal remedy must be of such a nature that full indemnity may be recovered without a multiplicity of suits. *Id.* It is not enough that there is a remedy at law; it must be plain, adequate, and complete, or in other words, as practical, and as efficient to the ends of justice and its prompt administration, as the remedy in equity. *Id.* Thus, in determining the propriety of injunctive relief, adequate remedy at law means that the legal remedy must be as efficient as the indicated equitable remedy would be, that such legal remedy must be presently available in a single action, and that such remedy must be certain and complete. *Id.*

22. If the Court does not preliminarily enjoin Fox's Food, FRG, and Jeremy Fox from abandoning the written Supply Agreement and the oral agreement regarding the North Market Store, HB3 will be compelled, among other consequences, to discharge its 34 employees and to close its business within weeks. HB3 has therefore established that it will sustain irreparable injury if a preliminary injunction is not granted.

23. There is no evidence that any third parties will be unjustifiably harmed if the Court grants HB3's motion for a preliminary injunction.

24. The requested preliminary injunction will serve the public interest. "Preserving the sanctity of contractual relations and preventing unfair competition have traditionally been in the public interest." *Mike McGarry & Sons, Inc. v. Gross*, 8th Dist. Cuyahoga No. 86603, 2006-Ohio-1759, ¶ 24. "[T]here is a benefit to enforcement of contractual relations." *Escape Enterprises, Ltd. v. Gosh Enterprises, Inc.*, 10th Dist. Franklin Nos. 04AP-834 and 04AP-857, 2005-Ohio-2637, ¶ 47.

## Decision

"Injunction is an extraordinary remedy equitable in nature, and its issuance may not be demanded as a matter of strict right; the allowance of an injunction rests in the sound discretion of the court and depends on the facts and circumstances surrounding the particular case[.]" *Perkins v. Village of Quaker City*, 165 Ohio St. 120, syllabus (1956). Considering the facts and circumstances surrounding this case, the Magistrate concludes that Plaintiff has proved that it is entitled to a preliminary injunction against Defendants. Accordingly, it is the Magistrate's decision that Plaintiff's October 13, 2022 motion for a preliminary injunction against Defendants be **GRANTED,** specifically:

> Defendants Fox's Food LLC, FRG Enterprises, LLC, Jeremy Fox, and all those acting in active concert or participation with those parties, are preliminarily enjoined from abandoning and/or breaching the "License and Supply Agreement" executed by Plaintiff, HB3, LLC, and Fox's Food LLC on September 28, 2016 and the oral agreement regarding the North Market Store;

> Defendants Sammy's Bagels, LLC, Jeremy Fox, and all those acting in active concert or participation with those parties, are preliminarily enjoined from tortiously interfering with the "License and Supply Agreement" executed by Plaintiff, HB3, LLC, and Fox's Food LLC on September 28, 2016 and the oral agreement regarding the North Market Store; and

> Defendants Fox's Food LLC, FRG Enterprises, LLC, Jeremy Fox, and all those acting in active concert or participation with those parties, are preliminarily enjoined from further fraudulently dissipating the assets of Fox's Food LLC.

> **A PARTY SHALL NOT ASSIGN AS ERROR ON APPEAL THE COURT'S ADOPTION OF ANY FACTUAL FINDING OR LEGAL CONCLUSION IN THE FOREGOING MAGISTRATE'S DECISION, WHETHER OR NOT SPECIFICALLY DESIGNATED AS A FINDING OF FACT OR CONCLUSION OF LAW UNDER CIV. R. 53(D)(3)(a)(ii), UNLESS THE PARTY TIMELY AND SPECIFICALLY OBJECTS TO THAT FACTUAL FINDING OR LEGAL CONCLUSION AS REQUIRED BY CIV. R. 53(D)(3)(b).**

Copies electronically transmitted to all parties and counsel of record.

**ORDER TO THE FRANKLIN COUNTY CLERK OF COURTS:** Please serve this Magistrate's Decision on the following individuals by ordinary U.S. mail:

James E. Arnold, Esq.
Michael L. Dillard, Jr., Esq.
115 W. Main St.
Ste. 400
Columbus, OH 43215

Andrew C. Clark, Esq.
John P. Miller, Esq.
Colleen R. Vance, Esq.
35 N. 4th St.
Ste. 100
Columbus, OH 43215-2511

Franklin County Court of Common Pleas

**Date:**            11-22-2022

**Case Title:**      HB3 LLC -VS- FOXS FOOD LLC ET AL

**Case Number:**     22CV007119

**Type:**            MAGISTRATE DECISION

So Ordered

/s/ Magistrate Pamela Broer Browning

Electronically signed on 2022-Nov-22    page 17 of 17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing *Motion of HB3, LLC, to Remand Claims* was served (i) electronically on the date of filing through the court's ECF System on all ECF participants registered in this case at the email address registered with the court and (ii) by ordinary U.S. Mail on April 4, 2024, addressed to:

Matthew T. Schaeffer, Esq.
Bailey Cavalieri LLC
10 West Broad Street, Suite 2100
Columbus, Ohio 43215

Andrew C. Clark, Esq.
Onda LaBuhn Ernsberger & Boggs Co., LPA
35 North Fourth Street, Suite 100
Columbus, Ohio 43215-2511

        /s/ James A. Coutinho
       James A. Coutinho    (0082430)